# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA and
STATE OF FLORIDA *ex rel.* J. DOE,

      Plaintiffs/Relator,

v.

WEST HERNANDO DIAGNOSTIC &
M. R. I. CENTER, INC.; DR. PAUL M. VELT;
DR. JAMES M. ESSER; DR. VENKATA
EMANDI; BILL ARNOLD; CRYSTAL
ARNOLD; ALAN MARSHALL; MICHAEL
J. KIERZYNSKI; DR. PARIKSITH
SINGH; AND DR. RAYMOND PEREZ,

      Defendants.

_____/

CASE NO.:

FILED *IN CAMERA* AND UNDER
SEAL PURSUANT TO 31 U.S.C. §
3730(b)

8:16 cv 1123 T 17 JSS

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiffs the United States of America and the State of Florida *ex rel.* J. Doe, by and

through J. Doe's attorneys, Sadowski Katz LLP and his local counsel, The Josephs Law

Firm, allege for their complaint as follows:

### PRELIMINARY STATEMENT AND NATURE OF THE ACTION

    1.    This is a civil action brought by Relator, J. Doe on Doe's own behalf and on behalf

of the United States of America ("United States") and the State of Florida, against West Hernando

Diagnostic & M.R.I. Center, Inc. ("WEST HERNANDO"), Dr. Paul M. Velt ("Velt"), Dr. James

M. Esser ("Esser"), Dr. Venkata Emandi ("Emandi"), Bill Arnold ("Arnold"), Crystal Arnold R.N.

("C. Arnold"), Alan Marshall ("Marshall")  Michael J. Kierzynski ("Kierzynski"), Dr. Pariksith

Singh ("Singh"), and Dr. Raymond Perez ("Perez") (collectively "Defendants") under the False

Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "False Claims Act"), and the Florida False Claims Act,

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

TPA-36550      $400      S-1

Florida §§ 68.081 *et seq.*, (the "Florida False Claims Act"), to recover damages sustained by, and penalties owed to, the United States and the State of Florida as the result of Defendants knowingly presenting or causing to be presented to the United States and the State of Florida false claims for the payment of funds disbursed under the Medicare Program, 42 U.S.C. §§ 1395c-1395i-4, the Medicaid Program, 42 U.S.C. §§ 1396 *et seq.*, and other federally funded healthcare programs, in excess of the amounts to which Defendants were lawfully entitled.

2.      These claims are based on Defendants' submission of false and fraudulent patient claims to the United States and the State of Florida in order to obtain payments for various diagnostic radiology testing and services as follows:  Defendants charged Medicare, Medicaid and other federally funded health care programs for computer analysis of screening mammogram to assist detection ("Computer-Aided Detection" or "CAD") of breast cancer under CPT 77052, when the Defendants knew the CAD was turned off and could not produce results or any diagnostic benefit.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the claims brought under the False Claims Act and the Florida False Claims Act pursuant to 31 U.S.C. § 3730, 28 U.S.C. §§ 1331, 1345, and 1367.

4.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. §§ 1391(b) and 1391(c), because Defendants are located in this District, do business in this District, and because many of the acts complained of herein took place in this District.

## THE PARTIES

5.      Plaintiffs are the United States of America on behalf of its agency the United States Department of Health and Human Services ("HHS") and the State of Florida on behalf of its agency the Department of Health ("DOH").

2

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

6.      Relator, J. Doe, is a career healthcare professional who resides in Florida. J. Doe has inside information relating to the condition of the equipment, charges, physicians' concerns and other information relating to the CAD charges. J. Doe has direct and independent information of the allegations herein and has previously disclosed the information to the Government. Relator worked at WEST HERNANDO at the Brookville location beginning in August of 2011. When Relator became a full time employee of WEST HERNANDO, Relator worked at the WEST HERNANDO Main Office location at 3315 Commercial Way (U.S. 19), Spring Hill, Florida, beginning April 16, 2013. Relator left the employ of WEST HERNANDO in June of 2015.

7.      Defendant, WEST HERNANDO DIAGNOSTIC & M.R.I. CENTER, is located at 3315 Commercial Way Spring Hill, Florida 34609. WEST HERNANDO has six facilities, of which four perform mammograms: The WEST HERNANDO Main Office at Commercial Way (U.S. 19), The WEST HERNANDO facility at 15427 Cortez Blvd., Brooksville, Florida 34613, The WEST HERNANDO Women's Imaging Center, and WEST HERNANDO—Pasco.

8.      Defendants, DRS. PAUL M. VELT, JAMES M. ESSER and RAYMOND PEREZ, are radiologists, who perform reads of mammograms at WEST HERNANDO. Defendants, Dr. VENKATA EMANDI, BILL ARNOLD, ALAN MARSHALL, MICHAEL J. KIERZYNSKI CPA, and DR. PARIKSITH SINGH, are the partners/owners of WEST HERNANDO. Defendant, Crystal Arnold, is the former spouse of Bill Arnold and is a registered nurse who performs nursing services for WEST HERNANDO.

**THE LAW**

A. The Medicare Program

9.      Medicare is a federal government-funded medical assistance program, primarily benefitting the elderly and the disabled, which was established in 1965 by Title XVIII of the Social

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

Security Act. *See* 42 U.S.C. §§ 1395 *et seq.* Medicare is administered by the federal Centers for Medicare and Medicaid Services ("CMS"), which is a division of the U.S. Department of Health and Human Services ("HHS").

10.    Part A of the Medicare Program provides federal payment for patient institutional care, including hospital, skilled nursing facility, and home healthcare. *See* 42 U.S.C. §§ 1395c-1395i-4. Part B of the Medicare Program provides supplemental insurance coverage for medical and other services that are not covered by Part A. 42 U.S.C. §§ 1395j-1395w-4.

11.    Under the Medicare Program, CMS makes payments to health care providers for outpatient services after the services are rendered. Medicare enters into provider agreements with health care providers and physicians that govern the health care provider's participation in the program. Under Medicare, reimbursement is prohibited if the item or service is not "reasonable and necessary for the diagnosis and treatment of illness or injury ...." 42 U.S.C. § 1395y(a)(1)(A).

12.    Medicare rules require that diagnostic tests payable under the physician fee schedule be furnished under the appropriate level of supervision by a physician. 42 C.F.R. § 410.32(a)(1). Providing the appropriate level of supervision and training is a condition of payment and services not provided with the correct level of supervision and training are not reasonable and necessary for the diagnosis and treatment of illness or injury, and are not reimbursable by Medicare.

13.    Every provider seeking to be reimbursed by Medicare for diagnostic tests must enroll in Medicare.

14.    A provider performing diagnostic tests is required by Medicare to enroll as an Independent Diagnostic Testing Facility ("IDTF") unless, among other things, the provider primarily bills for physician services, not diagnostic tests, and the diagnostic tests are performed

4

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

and interpreted at the same location where the practice physicians also treat patients for their medical conditions.

15.     Because the practice of radiology is unique, Medicare also specifically requires that a radiology provider of diagnostic services must enroll as an IDTF unless, among other the things, (1) a radiologist regularly performs physician services at the location where the diagnostic tests are performed, (2) the entity's billing patterns reflect that it is not primarily a testing facility, but was organized to provide the professional services of radiologists, and (3) a substantial majority of the radiological interpretations are performed at the practice location where the diagnostic tests are performed. If a provider cannot meet each of these requirements, it must enroll its practice location as an IDTF.

16.     Every Medicare enrollment application, for both physician offices and IDTFs contains a "Certification Statement" that must be signed by an appointed official of the provider, such as its chief executive officer. The appointed official is required to certify, in pertinent part, that:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

CMS Form 855B.

17.     IDTF enrollment applications also require additional certifications, including, the certification that the IDTF "[o]perates its business in compliance with all applicable Federal and State licensure and regulatory requirements for the health and safety of patients." 42 C.F.R. § 410.33(g)(1). The IDTF must also certify that it "ha[s] technical staff on duty with the

5

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

appropriate credentials to perform tests" and "must be able to produce the applicable Federal or State licenses or certifications of the individuals performing these services." 42 C.F.R. § 410.33(g)(12).

B.   The Medicaid Program

18.   The Medicaid program was created by Title XIX of the Social Security Act to provide healthcare benefits for poor and disabled individuals. 42 U.S.C. §§ 1396-1396v. The Medicaid program is funded by both state and federal funds, with the federal contribution computed separately for each state. 42 U.S.C. §§ 1396b, 1396d(b). Medicaid is administered at the federal level by CMS. Federal involvement in Medicaid is largely limited to providing matching funds and ensuring that the states comply with minimum standards in the administration of the program.

19.   The federal Medicaid statute sets forth the minimum requirements for state Medicaid Programs to qualify for federal funding, which is called federal financial participation ("FFP"). 42 U.S.C. §§ 1396 *et seq.*

20.   In order to be reimbursed, Medicaid required that services provided be medically necessary, which means among other things that they not "be furnished in a manner primarily intended for the convenience of the recipient, the recipient's caretaker or the provider." Florida Medicaid Physician Services Coverage and Limitations Handbook Chap. 2, p. 3.

21.   In order to be reimbursed, Medicaid requires the provider to enter into a provider agreement that requires it to, comply, among other things, "with all federal state, and local laws pertaining to licensure." Section 409.907(1), Florida Statutes.

22.   To enroll in the Florida Medicaid Program a provider must submit an enrollment application, which includes the following Certification Statements:

6

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

For the purposes of establishing eligibility to receive direct or indirect payment for services rendered to recipients of the Florida Medicaid Program, I understand that, under Section 409.920(2)(f), Florida Statutes, the filing of materially incomplete or false information with this enrollment request is a third degree felony and is sufficient cause for termination from the Florida Medicaid Program. I further understand that false claims, statements, documents, or concealment of material facts may be prosecuted under applicable federal and state laws. I understand that I am responsible for the information presented on this application and that the information is true, accurate, and complete. Furthermore, I agree to abide by the provisions of this provider agreement effective from the date that the services or goods were provided, pursuant to Section 409.907(11), Florida Statutes.

C. The Federal False Claims Act

23.    The False Claims Act provides, in pertinent part, that:

any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than [$5,500] and not more than [$11,000]... plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

24.    False certifications constitute false claims under the False Claims Act as do billing for services that are not "reasonable and necessary for the diagnosis and treatment of illness or injury" or for non-reimbursable services.

E.    The Florida False Claims Act

25.    The Florida False Claims Act provides in pertinent part:

(2) Any person who:

(a) knowingly presents or causes to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;
(b) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency;
. . .

7

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

(g) knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency,

is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

Florida False Claims Act §§ 68.082 (2)(a), (b), (g).

## THE FACTS

A.   <u>Background on Computer-Aided Detection in Radiological Diagnostics</u>

26.   Computer-Aided Detection ("CAD") is a secondary computer review of a radiological image, for example a mammogram, to increase the sensitivity in screening. CAD can detect micro-calcifications that sometimes indicate the presence of breast cancer.

27.   CAD gained increasing attention in recent years, and findings in a number of studies of CAD demonstrated the ability of CAD to detect and prompt mammographic signs of cancer and reported the potential of CAD to reduce the false-negative rate by 50%–70%.

28.   The cost of CAD is relatively small. The Medicare approved reimbursement in 2013 for CAD billed under CPT code 77052 in central Florida was $10.34.

29.   Sometime in or around 2010, Gary Crum of Suncoast Data Products turned the CAD system off at the WEST HERNANDO Brookville facility. The CAD system was turned off because the radiologist reading room workstation system could not function if the CAD system was also on. Accordingly, the CAD system was turned off in order to allow radiologists to read scans using the reading room workstation system. Relator called Mr. Crum several times to have him fix the radiologist reading room workstation when it was not operational. Relator learned that losing power to the building would cause the CAD system to reset itself into the on position. When

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

Mr. Crum came to fix the workstation, Relator was told directly by Mr. Crum that "Uh, oh, something [CAD] must be turned back on."

30.     There are three distinct ways a person could discover that the CAD system was not functioning:

(1)  The CAD files are empty.  Thus when a radiologist selected the next case to be read, each and every CAD file for each and every patient would be empty.

(2)  When other diagnostic imaging facilities such as Summit Imaging sent their mammograms to WEST HERNANDO and those images were uploaded to the WEST HERNANDO system, Summit's CAD images would be available.  Mammograms produced at WEST HERNANDO have no CAD images.

(3)  Any radiologist new to WEST HERNANDO, *e.g.,* a radiologist covering for a vacationing radiologist, would be shown how to use the radiologist reading workstation and would learn of the CAD not working.

31.     Despite the non-operational CAD system, radiologists at WEST HERNANDO continued to read studies, reference CAD, and send bills to insurers including Medicare, which specifically included additional costs for CAD related screenings. In March and April, 2010, Quality Assurance reports from the Brookville facility prepared by a technologist identified by the initials "rf," known to be Rachel Farnsworth, show that the CAD system was not producing an image.

32.     The demographic breakdown of patients at WEST HERNANDO is 65-70% Medicare beneficiaries and 10-20% Medicaid beneficiaries, with the remainder being insured privately.

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

B.     CAD Billings Without CAD Screenings

33.     On October 24, 2013, claim #11-13305-677-210, submitted by WEST HERNANDO at 3315 Commercial Way, Spring Hill, Florida, to Medicare, shows charges for Dr. Paul M. Velt screening mammography as well as a CAD of a 66-year-old woman. The CAD system was not operational and Dr. Velt knew the CAD was non-functioning but still billed Code 77052 for the CAD.  As a result of this claim, Medicare paid WEST Hernando $10.13 for a CAD screening that was not rendered.

34.     On October 9, 2013, WEST HERNANDO billed for a CAD screening in connection with a mammogram diagnostic procedure on a 62-year-old woman at WEST HERNANDO at 3315 Commercial Way, Spring Hill, Florida, where the CAD system was non-functioning.

35.     On September 25, 2013, Dr. James M. Esser billed for a CAD screening in connection with a mammogram on a 73-year-old-woman at the WEST HERNANDO Brooksville office, where the CAD system was non-functioning.

36.     On April 29, 2013, Dr. Paul M. Velt billed for a CAD screening in connection with a mammogram on a 64-year-old woman at the WEST HERNANDO Brooksville office, where the CAD system was non-functioning.

37.     On August 23, 2007, Dr. James M. Esser billed for a CAD screening in connection with a mammogram on a 69-year-old woman at the WEST HERNANDO Brooksville office, where the CAD system was non-functioning.

38.     Unlike Drs. Esser, Velt and Perez, who knowingly billed for CAD screenings that did not occur, Dr. Joel Sokolik, who was also a radiologist at WEST HERNANDO, refused to bill for CAD because he knew the CAD was non-functioning.

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

39.     On October 3, 2013, Dr. James M. Esser billed for a CAD screening in connection with a mammogram on a 57-year-old woman at the WEST HERNANDO Spring Hill Office, where the CAD system was non-functioning.

40.     On August 30, 2007, Dr. James M. Esser billed for a CAD screening in connection with a mammogram on a 61-year-old woman at the WEST HERNANDO Spring Hill Office, where the CAD system was non-functioning.

41.     On September 18, 2007, Dr. James M. Esser billed for a CAD screening in connection with a mammogram on an 81-year-old woman at the Pasco Imaging & Open MRI Center at 7615 Jacque Road, Hudson, Florida.  The Pasco location did not possess the CAD software to be able to perform the CAD.

42.     Six years later, on February 28, 2013, Dr. Howard W. Sterling screened the same patient (now 87-years-old), with a mammogram at the Pasco Imaging & Open MRI Center, and because Dr. Sterling complained about the CAD charge, it was removed from the bill for the February 28, 2013 procedure.  Dr. Howard Sterling also did not bill for a CAD in connection with a mammogram screening on a 67-year-old woman conducted on March 22, 2013, at WEST HERNANDO at the 3315 Commercial Way, Spring Hill, Florida location.  Dr. Sterling ended his contract with WEST HERNANDO in April 2013.

43.     Similarly, Dr. Joel Sokolik also refused to bill for CAD related screenings that were not rendered.  On September 27, 2013, Dr. Sokolik screened a 66-year-old woman with a mammogram and refused to charge for a CAD.  As a result of his refusal, Dr. Sololik was pulled from reading mammograms. Dr. James Esser then came into the WEST HERNANDO 3315 Commercial Way location on weekends to "clean up" the mammogram reads, *i.e.,* to include CAD charges.

11

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

44.     On September 27, 2013, four women had mammogram screening at the WEST HERNANDO 3315 Commercial Way, Spring Hill location.  Three of the mammograms were read by Dr. Sokolik who did not bill for CAD screenings, however the fourth, performed by Dr. James M. Esser of a 63-year-old woman, was billed for a CAD screening.  None of the four screenings utilized CAD.

45.     A log book dated June 1, 2010 from the WEST HERNANDO Commercial Way location, with a list of female patients has a notation by Rachel Farnsworth, the lead mammogram technologist, stating that the "Cad qc [quality control] target fails."  The notation continues to state "cont. Cad per Bill" Arnold.

46.     Another log book page from 2010 from the WEST HERNANDO Commercial Way main office contains another notation by Rachel Farnsworth stating "CAD target failed cont per Bill" Arnold.  Bill Arnold is the Administrator and one of five partners/owners of WEST HERNANDO.

47.     On September 25, 2013, for the period from 9:30 am to 11:00 am, a screen shot from a computer at the WEST HERNANDO Commercial Way facility shows five CAD screenings under procedure code 77052 conducted in connection with five mammograms.  These CAD screenings did not occur.

48.     By law, mammogram films are to be retained for ten years.  In 2014, however, Bill Arnold purged and destroyed all films.

49.     While dictating an addendum to a mammogram study dated March 2, 2015 done at the WEST HERNANDO facility at 11175 Countyline Rd, Spring Hill, Florida, on a 64-year-old woman, Raymond Perez DO complained to Relator that the CAD screening was not working and that he "told the others."  Relator was standing behind another radiologist, Dr. Freed, when he

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

telephoned Bill Arnold and told Arnold that he did not want CAD on his reports saying "I don't care, its bad medicine."

C.    Defendants' Violations of the False Claims Act

50.    Upon information and belief, WEST HERNANDO began operating its various facilities before 2009.   The facilities were enrolled shortly thereafter in the Medicare and Medicaid Programs and signed the respective certification statements in those enrollment applications.

51.    The technologists at the WEST HERNAOD facilities performed upwards of 24,000 mammograms per year when the CAD systems were non-functioning.   When the mammograms were processed however, a CAD screening was included as part of the radiologists' studies and a charge for a CAD screening was included in the claim for reimbursement to Medicare, Medicaid and other government insurers.

52.    Diagnostic services that were not provided are not reimbursable by Medicare or Medicaid. Each submission to Medicare or Medicaid for such procedure therefore amounts to a false claim.   Defendants submitted reimbursement claims for these procedures to Medicare and Medicaid for CPT Code 77052.

53.    The Government and the State of Florida would not have paid claims for these CAD procedures had it known they were not performed.

**FIRST CLAIM FOR RELIEF**
**Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A)**
**Presenting False Claims for Payment**

54.    Plaintiffs re-allege and incorporate by reference herein the allegations previously alleged.

13

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

55.    The United States seeks relief against Defendants under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

56.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in connection with the submission of their requests for reimbursement under the Medicare, Medicaid and other federal healthcare programs.

57.    The United States paid Defendants because of Defendants' fraudulent conduct.

58.    By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

<u>SECOND CLAIM FOR RELIEF</u>
**Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(B)**
**Use of False Statements**

59.    Plaintiffs re-allege and incorporate by reference herein the allegations previously alleged.

60.    The United States seeks relief against Defendants under Section 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

61.    Defendants knowingly made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, in connection with the submission of requests for reimbursement under the Medicare, Medicaid and other federal healthcare programs.

62.    The United States paid such false or fraudulent claims because of Defendants' acts and conduct.

63.    By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

**THIRD CLAIM FOR RELIEF**
**Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(G)**
**Use of False Statements**

64.     Plaintiffs re-allege and incorporate by reference herein the allegations previously alleged.

65.     The United States seeks relief against Defendants under Section § 3729(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

66.     Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in connection with the submission of their requests for reimbursement under the Medicare, Medicaid and other federal healthcare programs.

67.     Defendants failed to pay or transmit money due to the United States because of Defendants' acts and conduct.

68.     By reason of the Defendant's use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**Violations of the Florida False Claims Act - Fla. Stat. §§ 68.081 *et seq.***

69.     Plaintiffs re-allege and incorporate by reference herein the allegations previously alleged.

70.     This is a claim for treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. §§ 68.081 *et seq.*

71.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of an agency false or fraudulent claims for the improper payment or approval of radiological diagnostic tests and

15

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

procedures, and used false or fraudulent records to accomplish this purpose, as well as to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency.

72.     The State of Florida, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

73.     Defendants failed to pay or transmit money due to the State of Florida because of their acts and conduct.

74.     By reason of Defendants' acts and conduct, the State of Florida has been damaged in a substantial amount to be determined at trial.

WHEREFORE, plaintiffs the United States *ex rel.* J. Doe and the State of Florida *ex. rel.* J. Doe, request that judgment be entered in their favor and against Defendants as follows:

i.      On the First, Second, and Third Claims for relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B) and (G)), for treble the United States' damages, in an amount to be determined at trial, plus a $11,000 penalty for each false claim presented; awarding J. Doe a relator's share pursuant to 31 U.S.C. § 3730(d)(1) or (2); and an award of costs and attorney's fees pursuant to 31 U.S.C. § 3730(d);

ii.     On the Fourth Claim for relief (Violations of the Florida False Claims Act, Fla. Stat. §§ 68.081 *et seq.*), for treble the State of Florida's damages, in an amount to be determined at trial, plus a $11,000 penalty for each false claim; awarding J. Doe a relator's share pursuant to Florida False Claims Act § 68.081 *et seq.*; and an award of costs and attorney's fees pursuant to Florida False Claims Act § 68.081 *et seq.*; and

iii.    Awarding such further relief as is proper.

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

**JURY TRIAL IS DEMANDED**

Dated:  April 22, 2016

SADOWSKI KATZ LLP

Robert W. Sadowski
*Pro hac vice pending*
Raphael Katz
*Pro hac vice pending*
11 Broadway, 5th Floor
New York, New York 10006
rsadowski@sadowskikatz.com

THE JOSEPHS LAW FIRM

By: _____
Florida Bar No: 050895
The Josephs Law Firm
255 Alhambra Circle, Suite 700
Coral Gables, FL  33134
Tel.: (305) 445-3800 | Fax: (305) 448-5800
acj@florida-attorneys.com
admin@florida-attorneys.com

*Attorneys for Relator J. Doe*

## SERVICE LIST

United States Attorney for the
Middle District of Florida
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602

Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

17

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com

Office of Attorney General
State of Florida
Medicaid Fraud Control Unit
The Capitol PL-01
Tallahassee, FL 32399-1050

Alex Sink
Chief Financial Officer
200 East Gaines Street
Tallahassee, FL
32399-0300

THE JOSEPHS LAW FIRM
255 Alhambra Circle | Suite 700 | Coral Gables, FL 33134
Phone 305.445.3800 | Fax 305.448.5800
www.Florida-Attorneys.com

SADOWSKI KATZ LLP
11 Broadway | Suite 615 | New York, N.Y. 10004
(646) 503-5341 | (646) 503-5348
www.sadowskikatz.com